# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DOMINIC BIANCHI, an individual and resident of :
Baltimore County,                              :
2910 Miles Avenue,                             : No.
Baltimore, MD 21211;                           :
                                               :
DAVID SNOPE, an individual and resident of     :
Baltimore County,                              :
20814 York Road,                               :
Parkton, MD 21120;                             :
                                               :
MICAH SCHAEFER, an individual and resident of  :
Anne Arundel County,                           :
8316 Catherine Avenue,                         :
Pasadena, MD 21122;                            : **<u>COMPLAINT FOR DECLARATORY</u>**
                                               :
FIELD TRADERS LLC, a resident of Anne          : **<u>AND INJUNCTIVE RELIEF</u>**
Arundel County,                                :
2400 Mountain Road,                            :
Pasadena, MD 21122;                            :
                                               :
FIREARMS POLICY COALITION, INC.,               :
1215 K Street, 17th Floor,                     :
Sacramento, CA 95814;                          :
                                               :
SECOND AMENDMENT FOUNDATION,                   :
12500 N.E. 10th Place,                         :
Bellevue, WA, 98005; *and*                     :
                                               :
CITIZENS COMMITTEE FOR THE RIGHT TO            :
KEEP AND BEAR ARMS,                            :
Liberty Park,                                  :
12500 N.E. 10th Place,                         :
Bellevue, WA 98005,                            :
                                               :
        *Plaintiffs*,                          :
                                               :
v.                                             :
                                               :
BRIAN E. FROSH, in his official capacity as    :
Attorney General of Maryland,                  :
Office of the Attorney General,                :
200 St. Paul Place,                            :
Baltimore, Baltimore County, MD 21202;         :

-1-

COL. WOODROW W. JONES III, in his official          :
capacity as Secretary of State Police of Maryland;   :
Department of State Police,                          :
1201 Reisterstown Road,                              :
Pikesville, Baltimore County, MD 21208;              :
                                                     :
R. JAY FISHER, in his official capacity as Sheriff   :
of Baltimore County, Maryland,                       :
Office of Sheriff, County Courts Building,           :
401 Bosley Avenue,                                   :
Towson, Baltimore County, MD 21204; *and*            :
                                                     :
JIM FREDERICKS, in his official capacity as          :
Sheriff of Anne Arundel County, Maryland,            :
P. O. Box 507,                                       :
Office of Sheriff, Courthouse,                       :
8 Church Circle,                                     :
Annapolis, Anne Arundel County, MD 21404-0507, :
                                                     :
        *Defendants*.                                :
                                                     :

Plaintiffs DOMINIC BIANCHI, DAVID SNOPE, MICAH SCHAEFER, FIELD

TRADERS LLC ("FIELD TRADERS"), FIREARMS POLICY COALITION, INC. ("FPC"),

SECOND AMENDMENT FOUNDATION ("SAF"), and CITIZENS COMMITTEE FOR THE

RIGHT TO KEEP AND BEAR ARMS ("CCRKBA") (collectively, "Plaintiffs"), by and through

counsel of record, bring this complaint against Defendants, the Maryland state officials responsible

for enforcing and implementing Maryland's laws and regulations infringing the right of law-

abiding citizens to keep and bear commonly possessed firearms for defense of self and family and

for other lawful purposes, and allege as follows:

## **INTRODUCTION**

1.      The Second Amendment to the United States Constitution guarantees "the right of

the people to keep and bear Arms." U.S. Const. amend. II. Under this constitutional provision,

Plaintiffs Bianchi, Snope, Schaefer, and Field Traders (and its customers) and all similarly situated individuals who are legally eligible to possess and acquire firearms, have a fundamental, constitutionally guaranteed right to keep common firearms for defense of self and family and for other lawful pursuits.

2.      But the State of Maryland has criminalized the possession and transportation of common firearms by ordinary citizens, making it wholly unlawful for law-abiding citizens to exercise their fundamental right to keep and bear such arms. *See* Md. Code Ann., Crim. Law §§ 4-303(a), 301 (b)–(d), (h); Md. Code Ann., Pub. Safety § 5-101(r)(2).

3.      The State's few exceptions to this broad criminal statute do not allow typical law-abiding citizens to keep and bear common semiautomatic firearms. Crim. §§ 4-302, 303(b).

4.      The State of Maryland's laws, regulations, policies, practices, and customs individually and collectively deny millions of individuals who reside in Maryland, including Plaintiffs, their members and supporters, and others like them, their fundamental, individual right to keep and bear common arms (the "Regulatory Scheme"[1]).

5.      To be sure, Plaintiffs acknowledge that the result they seek is contrary to *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), but that case was wrongly decided. They therefore institute this litigation to vindicate their Second Amendment rights and to seek to have *Kolbe* overruled.

## JURISDICTION & VENUE

6.      This Court has subject-matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C.

---

[1] The "Regulatory Scheme" refers to sections 4-301–304, 306 of the Criminal Law article of the Maryland Code, Maryland Regulations 29.03.01.01–02, and all related regulations, policies, practices, and customs designed to enforce and implement the same.

§§ 1983 and 1988.

8.     Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

9.     Plaintiff Dominic Bianchi is a natural person, a resident of Baltimore County, Maryland, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Bianchi is a member of Plaintiffs FPC, SAF, and CCRKBA.

10.     Plaintiff David Snope is a natural person, a resident of Baltimore County, Maryland, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Snope is a member of Plaintiffs FPC, SAF, and CCRKBA.

11.     Plaintiff Micah Schaefer is a natural person, a resident of Anne Arundel County, Maryland, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Schaefer is a member of Plaintiffs FPC, SAF, and CCRKBA.

12.     Plaintiff Field Traders is a Maryland limited liability company with a principal place of business in Anne Arundel County, Maryland. Field Traders engages in the commercial sale, service, and transfer of firearms. Field Traders holds a Federal Firearms License ("FFL") for the manufacture, sale, and re-sale of firearms, as well as a Maryland Regulated Firearms Dealers License.

13.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights, especially, but not limited

to, the Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC brings this action on behalf of itself and its members and supporters who possess all the indicia of membership who seek to exercise their right to keep and bear common semiautomatic arms for lawful purposes in Maryland. FPC has been adversely and directly harmed in having expended and diverted organizational resources to defend the fundamental rights of its members and supporters, including Plaintiffs Bianchi, Snope, and Schaefer against Defendants' Regulatory Scheme, including through this action.

14.     Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated in 1974 under the laws of Washington with its principal place of business in Bellevue, Washington. SAF is a 501(c)(3) organization under Title 26 of the United States Code. SAF's mission is to preserve the individual constitutional right to keep and bear arms through public education, judicial, historical, and economic research, publishing, and legal-action programs focused on the civil right guaranteed by the Second Amendment to the United States Constitution. SAF has members and supporters nationwide, including in Maryland. SAF brings this action on behalf of itself and its members and supporters who possess all the indicia of membership, including Plaintiffs Bianchi, Snope, and Schaefer, who seek to exercise their right to keep and bear common semiautomatic arms for lawful purposes in Maryland.

15.     Plaintiff Citizens Committee for the Right to Keep and Bear Arms ("CCRKBA") is a nonprofit organization incorporated in 1970 under the laws of Washington with its principal place of business in Bellevue, Washington. CCRKBA is a 501(c)(4) social welfare organization. CCRKBA seeks to preserve the civil right of the individual to keep and bear arms guaranteed by

the Second Amendment through grassroots and indirect advocacy, education, research, publishing, and legal action focused on the Second Amendment to the United States Constitution, and the consequences of denial of this right. CCRKBA has members and supporters nationwide, including in Maryland. CCRKBA brings this action on behalf of itself and its members and supporters who possess all the indicia of membership, including Plaintiffs Bianchi, Snope, and Schaefer, who seek to exercise their right to keep and bear common semiautomatic arms for lawful purposes in Maryland.

16.     Defendant Brian E. Frosh is the Attorney General of the State of Maryland. In such capacity, Defendant Frosh is the head of the State's Office of the Attorney General, Md. Code Ann., State Gov't § 6-104, whose office holds statewide criminal jurisdiction to investigate and prosecute any indictable offense, including alleged violations of the Regulatory Scheme at issue in this action, upon request of the Governor or the General Assembly. Md. Const. art. V, § 3. Defendant Frosh is sued in his official capacity. Defendant Frosh's ongoing enforcement of the Regulatory Scheme's ban on "assault weapons" against Maryland residents places Plaintiffs Bianchi, Snope, Schaefer, and Field Traders (and its customers) under imminent threat of arrest and/or prosecution should they violate the Regulatory Scheme, which leaves them unable to keep common firearms. All other members and supporters of FPC, SAF, and CCRKBA in Maryland face the same clear threat of enforcement.

17.     Defendant Col. Woodrow W. Jones III is the Secretary of State Police of the State of Maryland. In such capacity, Defendant Jones executes and administers the State's laws, including the Regulatory Scheme. *E.g.*, Crim. §§ 4-303(b)(1), 304. Defendant Jones's ongoing enforcement of the Regulatory Scheme's ban on "assault weapons" against Maryland residents places Plaintiffs Bianchi, Snope, Schaefer, and Field Traders (and its customers) under imminent

threat of arrest and/or prosecution should they violate the Regulatory Scheme, which leaves them unable to keep common firearms. All other members and supporters of FPC, SAF, and CCRKBA in Maryland face the same clear threat of enforcement.

18.     Defendant R. Jay Fisher is Sheriff of Baltimore County, Maryland. In such capacity, Defendant Fisher executes and administers the State's laws, including the Regulatory Scheme. *E.g.*, Crim. § 4-304; Md. Code Ann., Cts. & Jud. Proc. § 2-301. Defendant Fisher's ongoing enforcement of the "assault weapons" ban against Baltimore County residents places Plaintiffs Bianchi and Snope under imminent threat of arrest and prosecution should they violate the Regulatory Scheme, which leaves them unable to keep common firearms. All similarly situated members and supporters of FPC, SAF, and CCRKBA in Baltimore County face the same clear threat of enforcement.

19.     Defendant Jim Fredericks is Sheriff of Anne Arundel County, Maryland. In such capacity, Defendant Fredericks executes and administers the State's laws, including the Regulatory Scheme. *E.g.*, Crim. § 4-304; Cts. & Jud. Proc. § 2-301. Defendant Fredericks's ongoing enforcement of the "assault weapons" ban against Anne Arundel County residents places Plaintiffs Schaefer and Field Traders (and its customers) under imminent threat of arrest and/or prosecution should they violate the Regulatory Scheme, which leaves them unable to keep common firearms. All similarly situated members and supporters of FPC, SAF, and CCRKBA in Anne Arundel County face the same clear threat of enforcement.

## FACTUAL ALLEGATIONS

## I.     MARYLAND'S UNCONSTITUTIONAL REGULATORY SCHEME

20.     The State of Maryland deems scores of common semiautomatic rifles, semiautomatic or pump-action shotguns, semiautomatic pistols, and "copycat" weapons "assault weapons"—and bans all of them outright. Crim. §§ 4-301, 4-303; Pub. Safety § 5-101(r)(2).

21.     This broad ban on transporting, possessing, offering to sell, transferring, purchasing, or receiving any "assault weapon" applies to everyone who does not fall into one of a few, specific, narrow categories, primarily on-duty military personnel, law enforcement officers, and certain other government officials. *See* Crim. §§ 4-302, 4-303(b)(2), (4)–(5).

22.     Ordinary citizens may transport or possess "assault pistol[s]" only if they possessed and registered them before June and August 1994, respectively. *Id.* § 4-303(a), (b)(1). They may transport, possess, offer to sell, sell, transfer, or purchase "assault long gun[s] and "copycat weapon[s]" only if they possessed, purchased, or applied to purchase them on or before October 1, 2013. *Id.* § 4-303(a), (b)(3).

23.     If an ordinary, law-abiding citizen keeps or bears an arm that he has not possessed for the past seven years, if not longer, and Defendants' Regulatory Scheme has dubbed that arm an "assault weapon," then Defendants or their agents may seize and dispose of that arm, regardless of whether it is in common use. *See id.* § 4-304. Moreover, any ordinary, law-abiding citizen who possesses such "assault weapons," or transports them into the State, commits a misdemeanor offense and is subject to severe criminal sanctions, including imprisonment for up to three years for the first offense. Crim. §§ 4-303, 306(a). Further, under both state and federal law, conviction under these provisions would result in a lifetime ban on possession even of firearms that have not been prohibited under the Regulatory Scheme as "assault weapons." *See* Pub. Safety §§ 5-101(g)(3), 5-133(b)(1), 5-205(b)(1) (Maryland law); 18 U.S.C. § 922(g)(1), § 921(a)(20) (federal law).

## II.    FIREARMS IN COMMON USE

24.     The semiautomatic pistols banned as "assault pistols" are any of the following or their copies, regardless of producer and manufacturer:

(1) AA Arms AP-9 semiautomatic pistol;

(2) Bushmaster semiautomatic pistol;
(3) Claridge HI-TEC semiautomatic pistol;
(4) D Max Industries semiautomatic pistol;
(5) Encom MK-IV, MP-9, or MP-45 semiautomatic pistol;
(6) Heckler and Koch semiautomatic SP-89 pistol;
(7) Holmes MP-83 semiautomatic pistol;
(8) Ingram MAC 10/11 semiautomatic pistol and variations including the Partisan
Avenger and the SWD Cobray;
(9) Intratec TEC-9/DC-9 semiautomatic pistol in any centerfire variation;
(10) P.A.W.S. type semiautomatic pistol;
(11) Skorpion semiautomatic pistol;
(12) Spectre double action semiautomatic pistol (Sile, F.I.E., Mitchell);
(13) UZI semiautomatic pistol;
(14) Weaver Arms semiautomatic Nighthawk pistol; or
(15) Wilkinson semiautomatic "Linda" pistol.

Crim. § 4-301(c).

25.     The semiautomatic long guns banned as "assault long guns" are any of the

following or their copies, regardless of producer and manufacturer:

(i) American Arms Spectre da Semiautomatic carbine;
(ii) AK-47 in all forms;
(iii) Algimec AGM-1 type semi-auto;
(iv) AR 100 type semi-auto;
(v) AR 180 type semi-auto;
(vi) Argentine L.S.R. semi-auto;
(vii) Australian Automatic Arms SAR type semi-auto;
(viii) Auto-Ordnance Thompson M1 and 1927 semi-automatics;
(ix) Barrett light .50 cal. semi-auto;
(x) Beretta AR70 type semi-auto;
(xi) Bushmaster semi-auto rifle;
(xii) Calico models M-100 and M-900;
(xiii) CIS SR 88 type semi-auto;
(xiv) Claridge HI TEC C-9 carbines;
(xv) Colt AR-15, CAR-15, and all imitations except Colt AR-15 Sporter H-BAR rifle;
(xvi) Daewoo MAX 1 and MAX 2, aka AR 100, 110C, K-1, and K-2;
(xvii) Dragunov Chinese made semi-auto;
(xviii) Famas semi-auto (.223 caliber);
(xix) Feather AT-9 semi-auto;
(xx) FN LAR and FN FAL assault rifle;
(xxi) FNC semi-auto type carbine;
(xxii) F.I.E./Franchi LAW 12 and SPAS 12 assault shotgun;
(xxiii) Steyr-AUG-SA semi-auto;
(xxiv) Galil models AR and ARM semi-auto;

(xxv) Heckler and Koch HK-91 A3, HK-93 A2, HK-94 A2 and A3;
(xxvi) Holmes model 88 shotgun;
(xxvii) Avtomat Kalashnikov semiautomatic rifle in any format;
(xxviii) Manchester Arms "Commando" MK-45, MK-9;
(xxix) Mandell TAC-1 semi-auto carbine;
(xxx) Mossberg model 500 Bullpup assault shotgun;
(xxxi) Sterling Mark 6;
(xxxii) P.A.W.S. carbine;
(xxxiii) Ruger mini-14 folding stock model (.223 caliber);
(xxxiv) SIG 550/551 assault rifle (.223 caliber);
(xxxv) SKS with detachable magazine;
(xxxvi) AP-74 Commando type semi-auto;
(xxxvii) Springfield Armory BM-59, SAR-48, G3, SAR-3, M-21 sniper rifle, M1A, excluding the M1 Garand;
(xxxviii) Street sweeper assault type shotgun;
(xxxix) Striker 12 assault shotgun in all formats;
(xl) Unique F11 semi-auto type;
(xli) Daewoo USAS 12 semi-auto shotgun;
(xlii) UZI 9mm carbine or rifle;
(xliii) Valmet M-76 and M-78 semi-auto;
(xliv) Weaver Arms "Nighthawk" semi-auto carbine; or
(xlv) Wilkinson Arms 9mm semi-auto "Terry".

*Id.* § 4-301(b); Pub. Safety § 5-101(r)(2).

26.     In addition, Maryland bans any "copycat weapon," which is defined as:

(i) a semiautomatic centerfire rifle that can accept a detachable magazine and has any two of the following:
      1. a folding stock;
      2. a grenade launcher or flare launcher; or
      3. a flash suppressor;
(ii) a semiautomatic centerfire rifle that has a fixed magazine with the capacity to accept more than 10 rounds;
(iii) a semiautomatic centerfire rifle that has an overall length of less than 29 inches;
(iv) a semiautomatic pistol with a fixed magazine that can accept more than 10 rounds;
(v) a semiautomatic shotgun that has a folding stock; or
(vi) a shotgun with a revolving cylinder.

Crim. § 4-301(h).

27.     Semiautomatic handguns are in common use at the present time. *Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1269 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("[H]andguns—the vast majority of which today are semi-automatic—. . . have not traditionally

been banned and are in common use by law-abiding citizens."). Already at the start of the last

decade, over eighty percent of the handguns sold in the United States were semiautomatic.

Nicholas J. Johnson et al., *Firearms Law and the Second Amendment* 8, 11 (2012). Millions were

produced in 2019 alone.

28.     Semiautomatic long guns, too, "traditionally have been widely accepted as lawful

possessions," *see Staples v. United States*, 511 U.S. 600, 612 (1994) (so categorizing an AR-15

semiautomatic rifle), and they too are in common use presently, *see Heller II*, 670 F.3d at 1261

("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common

use' as the plaintiffs contend."). Indeed, counting just "modern sporting rifles" (a category that

includes semiautomatic AR-style and AK-style rifles), the number in circulation today

approaches twenty million. According to industry sources, more than one out of every five

firearms sold in certain recent years were semiautomatic modern sporting rifles.

29.     The banned semiautomatic firearms, like all other semiautomatic firearms, fire

only one round for each pull of the trigger. They are not machine guns. *See Staples*, 511 U.S. at

602 n.1. What is more, the designation "assault weapons" is a complete misnomer, "developed

by anti-gun publicists" in their crusade against lawful firearm ownership. *See Stenberg v.

Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting).

30.     Rifles built on an AR-style platform are a paradigmatic example of the type of

arm Maryland bans. AR-15 rifles, for example, are among the most popular firearms in the

nation, and they are owned by millions of Americans.

31.     Central among the common uses of firearms banned in Maryland is defense of

self in the home. For example, most AR-style firearms are chambered for 5.56x45mm NATO

(similar to .223 Remington) ammunition, a relatively inexpensive and highly common cartridge

that is particularly well suited for home-defense purposes because it has sufficient stopping power in the event a home intruder is encountered but loses velocity relatively quickly after passing through a target and other objects, thus decreasing the chance that an errant shot will strike an unintended target. Although most pistol rounds have less muzzle velocity than a 5.56x45mm NATO round, they have greater mass, maintain velocity after passing through walls and other objects, and pose substantially greater risk to unintended targets in the home. An AR-15 rifle chambered for 5.56x45mm NATO ammunition is an optimal firearm to rely on in a self-defense encounter.

32.     Like the AR-15 generally, the specific features of banned so-called "copycat weapons" aid home defense. A flash suppressor, for example, not only reduces the chances that a home-invader will mark his victim's position; it also protects a homeowner against momentary blindness when firing in self-defense. David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J. Contemp. L. 381, 397 (1994). Similarly, folding stocks, whether on rifles or shotguns, support maneuverability in tight home spaces, Kopel at 398–99, as well as safe storage of defense instruments.

33.     A semiautomatic centerfire rifle that has an overall length of less than 29 inches, but which meets the federal overall length requirement of 26 inches, is especially helpful in home-defense situations, as it reduces the mass of a firearm at its least-supported position away from the possessor, helpful to those of smaller stature or less strength, and helpful to reduce the length of the barrel to better move around obstacles, through hallways, and the like.

34.     AR-15 rifles, and most all common semiautomatic firearms, including those banned under the Regulatory Scheme, can accept a detachable magazine. Detachable magazines

not only assist law-abiding shooters to reload their weapon, but in the case of some platforms,
including the AR-15, they are required to safely and quickly remedy malfunctions.

35.     Encounters with criminal intruders in the home are not uncommon.  For instance,
according to a report by the U.S. Department of Justice, Bureau of Justice Statistics, household
members are present for almost a third of all burglaries and become victims of violent crimes in
more than a quarter of those cases. Studies on the frequency of defensive gun uses in the United
States have determined that there are up to 2.5 million instances each year in which civilians use
firearms to defend themselves or their property.

36.     Other common, lawful uses of the banned firearms are hunting and sport. At least
a third of all gun-owners own a firearm for hunting or sport shooting, and recreational target
shooting has been cited as the top reason, albeit closely followed by home defense, for owning a
modern sporting rifle.

37.     Here again, the banned features of so-called "copycat weapons" serve lawful
purposes. Folding stocks, for example, allow for safe transportation, not to mention easier
carrying over long distances while hunting. And flash suppressors promote accuracy in target-
shooting and hunting (especially at dawn).

38.     By contrast, one use that is not common for so-called "assault rifles" is crime.
According to a widely cited 2004 study, these arms "are used in a small fraction of gun crimes."
This has long been true. *See* Gary Kleck, *Targeting Guns: Firearms and Their Control* 112
(1997) (evidence indicates that "well under 1% [of crime guns] are 'assault rifles.' ").

39.     Between the Regulatory Scheme's prohibition of the enumerated pistols, long
guns, their "copies," and the "copycat weapons," the Scheme effectively bans the acquisition of

semiautomatic firearms that are commonly possessed and used for lawful purposes, including self-defense in the home.

## III.     THE EFFECT ON PLAINTIFFS

40.     Plaintiff Dominic Bianchi works as a paramedic for a local fire department and interacts with potentially dangerous people on a regular basis. He lives in a small row house in a neighborhood of Baltimore, Maryland that is, in his experience, high in crime and slow in response-time. Bianchi intends and desires to exercise his right to keep and bear arms by possessing a so-called assault weapon, particularly a DesertTech MDRX bullpup rifle (a semiautomatic centerfire rifle that has an overall length of less than 29 inches), for lawful purposes, especially for self-defense. Bianchi would acquire and possess this firearm, were it not for Defendants' enforcement of Maryland's outright ban on these common arms. In light of Defendants' enforcement, however, Bianchi continues to refrain from acquiring, possessing, or transporting a DesertTech MDRX or any similar firearm, for self-defense and other lawful purposes.

41.     Plaintiff David Snope is a former resident of Parkville, Maryland, where he was robbed multiple times, had his house and car broken into, and suffered acts of intimidation. Snope recently left that neighborhood to reside in Parkton, Maryland. For home- and self-defense, as well as for range-shooting and hunting, Snope intends and desires to exercise his right to keep and bear arms by acquiring, possessing and transporting so-called assault weapons, including an M1A AK47 style rifle, a Smith & Wesson Sport 2 AR-15, and a Dragunov-style rifle. Snope would acquire and possess such firearms, were it not for Defendants' enforcement of Maryland's outright ban on these common arms. In light of Defendants' enforcement, however, Snope continues to refrain from acquiring, possessing, or transporting such firearms for self-defense and other lawful purposes.

42.     Plaintiff Micah Schaefer intends and desires to exercise his right to keep and bear arms by possessing so-called assault weapons, including an SLR-107UR AK47 rifle, for lawful purposes, especially for self-defense. Schaefer would acquire and possess such firearms, were it not for Defendants' enforcement of Maryland's outright ban on these common arms. In light of Defendants' enforcement, however, Schaefer continues to refrain from acquiring or possessing such firearms for self-defense and other lawful purposes.

43.     Plaintiff Field Traders LLC is in the business of selling firearms in the State of Maryland. Field Traders' business is subject to and adversely affected by the restrictions articulated in this complaint on "assault weapons" (including the definitions thereof).

44.     For example, one segment of Field Traders' business involves the sale of rifles, including semiautomatic rifles. As a direct result of the so-called "assault weapons" ban, Field Traders is prohibited from selling many of the most popular semiautomatic rifles, such as AR-15-type rifles, to customers in Maryland. But for Maryland's ban on "assault weapons," Field Traders would sell AR-15-type rifles and other banned firearms in Maryland. Maryland's ban therefore has substantially harmed Field Traders' business. Indeed, potential customers frequently inquire about purchasing banned firearms, but Field Traders cannot complete the sales because of Maryland's ban.

45.     Members of Plaintiffs FPC, SAF, and CCRKBA intend and desire to acquire, possess, and transport pistols, rifles, and shotguns banned by the challenged provisions, and are subject to and adversely affected by each and every restriction articulated in this complaint on "assault weapons" (including each definition thereof).

46.     As examples, some members would possess, but for the Regulatory Scheme, semiautomatic rifles that have a folding stock, a flash suppressor, and an ability to accept a

detachable magazine. Such rifles are commonly used for self-defense, hunting, and target-shooting. The folding stock permits for easy transportation and storage, and the flash suppressor preserves the visual clarity of the shooter and assists in concealing a home-defender's position from a perpetrator in a low-light situation.

47.     But for the Regulatory Scheme, these members would forthwith obtain and possess more such firearms, and other members and supporters would forthwith obtain identical or similar firearms but cannot do so because they are considered "assault weapons."

48.     But for Maryland's unconstitutional Regulatory Scheme, and Defendants' enforcement thereof, and the severe lifelong and criminal penalties associated with violations of the Regulatory Scheme, Plaintiffs Bianchi, Snope, Schaefer, and Field Traders, and similarly situated members of Plaintiffs FPC, SAF, or CCRKBA would exercise their right to keep and bear the banned firearms for lawful purposes, including self-defense, without the fear or risk of arrest and prosecution, and the loss of their right to keep and bear arms for engaging in constitutionally protected, lawful conduct.

## IV.   DEFENDANTS' LAWS AND REGULATIONS VIOLATE THE SECOND AMENDMENT.

49.     The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

50.     The Fourteenth Amendment to the United States Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

51.     The Second Amendment is fully applicable to the States through the Fourteenth

Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

52.    "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008).

53.    "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id.* at 634–35.

54.    At the same time, indeed for this reason, "[j]ust as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582 (citations omitted).

55.    The firearms at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. And they are, moreover, exactly what they would bring to service in, e.g., militia duty, repelling violent mobs (i.e., the Korean shopkeepers defending lives during the Los Angeles Riots in 1992), should such be necessary.

56.    In *Heller*, the Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id.* at 592.

57.    This is "'a natural right which the people have reserved to themselves, confirmed by the Bill of Rights.'" *Id.* at 594 (quoting A Journal of the Times: Mar. 17, New York Journal, Supp. 1, Apr. 13, 1769).

58.     When seconds count, and the police are minutes or hours away, if they come at all—they certainly have no obligation to, *see, e.g.*, *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)—the People have a constitutional right to make use of common firearms for effective self-defense and not to be disarmed by the Regulatory Scheme and its enforcement by Defendants.

59.     Further, the Second Amendment protects "arms . . . of the kind in common use . . . for lawful purposes like self-defense." *Heller*, 554 U.S. at 624 (quotation marks and citation omitted).

60.     Assuming ordinary citizens are not disqualified from exercising Second Amendment rights, the State must permit them to keep and bear common firearms for lawful purposes.

61.     The right to keep and bear common firearms guaranteed under the Bill of Rights cannot be subjected to laws and regulations that prohibit ordinary, law-abiding citizens from keeping and bearing common firearms—particularly when such schemes place these citizens under constant threat of criminal sanction for violating them.

62.     The enshrinement of the right to keep and bear arms in the Second Amendment has necessarily taken such "policy choices off the table." *Id.* at 636.

63.     Yet, this is precisely how the Regulatory Scheme in Maryland operates, completely shutting out ordinary, law-abiding citizens from exercising their rights in the State.

## **COUNT ONE**

### **42 U.S.C. § 1983 Action for Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments of the U.S. Constitution**

64.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

65.     There is an actual and present controversy between the parties.

66.     The Second and Fourteenth Amendments to the United States Constitution guarantee ordinary, law-abiding citizens of states their fundamental right to keep and bear arms, both in the home and in public.

67.     The keeping and bearing of arms is a fundamental right that is necessary to our system of ordered liberty, and is additionally a privilege and immunity of citizenship, protected by the Fourteenth Amendment.

68.     The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire, transport, possess, purchase, and receive common firearms for all lawful purposes, including self-defense.

69.     Under section 4-301(h) of the Criminal Law article of the Maryland Code, the State bans arms that are commonly used for lawful purposes, grounding this ban on features that do not make a firearm more powerful or dangerous. No adequate basis exists for such a ban.

70.     Also banned under the Regulatory Scheme as "assault weapons" are the common firearms listed in section 4-301(b)–(c) of the Criminal Law article, and section 5-101(r)(2) of the Public Safety article, of the Maryland Code. No adequate basis exists to restrict such firearms, which fire only once per trigger pull, like all other semiautomatic firearms.

71.     42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

72.     Defendants, individually and collectively, and under color of state law at all relevant times, have deprived the fundamental constitutional rights of persons in the State of Maryland, including Plaintiffs Bianchi, Snope, Schaefer, and Field Traders (and its customers), and all similarly situated members of Plaintiffs FPC, SAF, or CCRKBA, through Defendants' enforcement and implementation of the Regulatory Scheme.

73.     For all the reasons asserted herein, Defendants have acted in violation of, and continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

**PRAYER FOR RELIEF**

74.     WHEREFORE, Plaintiffs respectfully pray for the following relief:

a.      A declaratory judgment that Plaintiffs Bianchi, Snope, Schaefer, and Field Traders (and its customers), and all similarly situated members of Plaintiffs FPC, SAF, or CCRKBA, have a fundamental right to keep and bear arms, including by offering for sale, acquiring, transporting into and within Maryland, possessing, transferring, and lawfully using common semiautomatic firearms banned under the Regulatory Scheme for all lawful purposes including self-defense, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

b.      A declaratory judgment that the Regulatory Scheme and all related regulations, policies, and/or customs designed to enforce or implement the same, prevent Plaintiffs Bianchi, Snope, Schaefer, and Field Traders (and its customers), and all similarly situated members of Plaintiffs FPC, SAF, or CCRKBA, from exercising their fundamental right to keep and bear arms, including by offering for sale, acquiring, transporting into and within Maryland, possessing, transferring, and lawfully using common semiautomatic firearms banned under the Regulatory Scheme for all lawful purposes including self-defense, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

c.      A preliminary and permanent injunction prohibiting each Defendant, and each Defendant's respective employees, officers, agents, representatives, all those acting in concert or participation with him or her, and all who have notice of the injunction, from enforcing the Regulatory Scheme and all related regulations, policies, and/or customs

designed to enforce or implement the same;

      d.      Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

      e.      Any and all other and further legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: December 1, 2020                  Respectfully submitted,

s/ Nicole J. Moss
Nicole J. Moss, Bar No. 20222
   *Attorney of Record*
David H. Thompson*
Peter A. Patterson*
John D. Ohlendorf*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
nmoss@cooperkirk.com

Raymond M. DiGuiseppe*
law.rmd@gmail.com
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: 910-713-8804
Fax: 910-672-7705

Adam Kraut, Esq.*
Firearms Policy Coalition
1215 K Street, 17th Floor
Sacramento, CA 95814
P: (916) 476-2342
F: (215) 525-4437
akraut@fpclaw.org

  *Pro hac vice* application forthcoming

Attorneys for Plaintiffs